**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **MAGISTRATE NO. 21-MJ-233 (RMM)** |
| | : | |
| **CLAYTON MULLINS,** | : | |
| **Defendant.** | : | |

**GOVERNMENT'S SUPPLEMENTAL MOTION
<u>FOR PRETRIAL DETENTION</u>**

The United States of America, by and through counsel, the Acting United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion that the defendant, Clayton Ray Mullins, be detained pending trial pursuant to 18 U.S.C. §§ 3142(e) and (f)(2). The Court should order the defendant detained pursuant to 18 U.S.C. § 3142(e) because there are no conditions or combination of conditions which will reasonably assure the appearance of the defendant as required and ensure the safety of any other person and the community.

The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**<u>PROCEDURAL POSTURE</u>**

1. **Procedural Posture**

On February 13, 2021, Mullins was charged by complaint with:

1) Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1);

2) Obstruction of Law Enforcement During Civil Disorder, in violation of 18 U.S.C. §

231(a)(3);

3) Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority, in violation of 18 U.S.C. 1752(a)(1);

4) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2);

5) Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. 1752(a)(4); and

6) Violent Entry and Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(F).

On February 23, 2021, defendant Clayton Ray Mullins was arrested in his home state of Kentucky on an arrest warrant issued from the United States District Court for the District of Columbia by Magistrate Judge Robin M. Meriweather.   On February 25, 2021, during the defendant's initial appearance in the Western District of Kentucky, the government made a motion to detain the defendant without bond pending trial pursuant to 18 U.S.C. §§ 3142(e) and (f)(2).  A detention hearing was held on February 26, 2021, during which the presiding magistrate judge denied the government's detention motion and issued an order releasing the defendant with certain conditions. Following this, the government orally moved to stay the defendant's release pending an appeal by the government. The magistrate judge granted that request, and absent further action, stayed the defendant's release until close of business on March 2, 2021.  On March 1, 2021, the government filed an Emergency Motion to Stay and Review the magistrate judge's order, pursuant to 18 U.S.C. § 3145(a)(1) (when defendant is released by person other than judge of court having original jurisdiction over offense, government's appeal lies to court of original jurisdiction).

On March 1, 2021, the Court granted the government's Emergency Motion to Stay, and scheduled a hearing for March 2, 2021.

## FACTUAL BACKGROUND

**1.  The Attack on the United States Capitol on January 6, 2021.**

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings still underway and the exterior doors and

windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

## 2.  The Defendant's Initial Presence at the U.S. Capitol

The defendant and his wife traveled from Kentucky to Washington, D.C. for the events of January 6, 2021. His prominent presence at the U.S. Capitol was captured in numerous videos and photographs on social media. Photos and videos showing Mullins were captioned or tagged with the hashtag #slickback, a reference to the slicked back style in which Mullins wears his hair. One such video, posted on Twitter,[1] shows a group of rioters trying to force their way through a barricade of bicycle racks in a restricted area of the U.S. Capitol Grounds, and then spraying law

---

[1] Available at https://twitter.com/1600PennPooch/status/1350587717881647106?s=20.

enforcement officers with a chemical irritant. *See* Exhibit 1.0. The video shows the defendant was involved in this altercation. Mullins is seen rushing towards the police line immediately after his fellow rioter sprayed the officers with the chemical irritant, and then turning back toward the crowd as he himself was affected by the chemical irritant.

*Exhibit 1.1*



A review of Metropolitan Police Department ("MPD") bodyworn camera ("BWC") confirms that this altercation occurred on the southwest perimeter of the U.S. Capitol, near a media tower, at 2:10 pm. *See* Exhibit 2.0.   BWC shows the rioters became increasingly hostile in the minutes before the rioters sprayed law enforcement officers with the chemical irritant.  As the crowd continued to push against the police barricade, the force of the crowd knocked over a metal light post.  Officers rushed to grab the light post as it began to fall.  The force of the crowd, combined with the falling light post, knocked over some of the metal bicycle racks that were serving as a barricade between the crowd and the restricted Capitol.  As MPD and U.S. Capitol Police ("USCP") officers struggled to place the bicycle racks back in place and hold the police line, an individual in the crowd stepped forward and sprayed them with a chemical irritant, as seen in the Twitter video.  Officers' BWC shows Mullins in the crowd seconds before the chemical

irritant was sprayed on the officers.

*Exhibit 2.1*



*Exhibit 3*



BWC footage showed that the mob of rioters became even more hostile after they sprayed the chemical irritant on the officers at 2:10 pm. The crowd, including the defendant, eventually overran the police barricade and physically engaged with officers, who were attempting to protect the U.S. Capitol by maintaining the perimeter. Law enforcement, however, were outnumbered by

the violent crowd and forced to retreat up the Capitol steps towards the terrace levels. The photograph below shows the defendant engaging with officers shortly before the officers were forced to retreat.

*Exhibit 4*



Video footage posted to YouTube[2] also appears to depict the time period in which the crowd was able to push past the law enforcement barricade. *See* Exhibit 5.0. The video shows that rioters began grabbing bicycle racks that were serving as a barricade, and passing them back through the crowd. The defendant appears to be amongst those that assisted in passing back the bicycle racks.

---

[2] *Available at* https://www.youtube.com/watch?v=iNFcdpZdkh0.

*Exhibit 5.1*



After the rioters overran the initial police barricades, Mullins continued on to the Capitol

Building, and can be seen standing on the railings of the Capitol terrace at one point.

*Exhibit 6*



Eventually, Mullins made his way to the archway of the lower western terrace of the

Capitol Building, where members of MPD and USCP were stationed to protect rioters from

gaining entrance to the Capitol.

*Exhibit 7*



The aforementioned YouTube video footage shows that the defendant at one point was able to enter the tunnel, and then appeared to be ejected from the tunnel. *See* Exhibit 5.2. As he was ejected from the tunnel, he clung to the wooden façade that was erected around the archway.

*Exhibit 5.3*                                            *Exhibit 5.4*



The defendant remained at the entrance to the lower western terrace archway after he was ejected from the tunnel.

3.   **The Defendant's Assaultive Conduct at the Capitol's Lower Western Terrace**

MPD Officer A.W. was amongst those MPD officers who were directed to report to the U.S. Capitol to assist the USCP in their duties to maintain the security of the U.S. Capitol. At approximately 4:20 pm, Officer A.W. walked through the interior tunnel of the U.S. Capitol Building and assumed a post in an archway that provided access to the building's lower western terrace. Officer A.W. was wearing a full MPD-issued uniform and neon jacket. Officer A.W.'s approximate location is denoted below by the red circle.

*Exhibit 8*



In a 90 second time period, from approximately 4:27:00 to 4:28:30, Officer A.W. and at least two other officers, Officer B.M. and Officer C.M. were brutally assaulted by the rioters, including the defendant.[3]  Specifically, Officer A.W. was knocked to the archway ground by a currently un-identified assailant, and then had his baton snatched out of his hands by another rioter. While Officer A.W. was laying on the ground of the archway, Officer B.M. was pulled out of the archway, overtop Officer A.W., dragged into the crowd in a prone position and assaulted by rioters

---

[3] Seconds before the assault began, at 4:26:55 pm, a member of the crowd was pleading with Officer A.W. and others for help, as his friend Roseanne Boyland was dying after being trampled by the mob.  Boyland's associate, Justin Winchell, was attempting to bring Boyland's body forward to law enforcement when the assaults of Officers A.W., B.M., and C.M. began.

with a baton and American flag pole. Other officers, including Officer C.M., were assaulted as they attempted to reach out for Officer B.M. Meanwhile, Mullins and others began to drag Officer A.W. into the crowd.  *See* Exhibit 9.

Officer A.W. recalled having his helmet ripped off his head and being stripped of his CDU baton, gas mask (later recovered), and MPD issued cellular phone. As he was dragged into the mob, Officer A.W. was kicked, struck with poles, and stomped on by several individuals. Additionally, Officer A.W. recalled being maced once his mask was ripped off. At some point during the assault, Officer A.W. was able to retrieve his gas mask and one individual prevented the rioters from further assaulting him. Officer A.W. was able to get on his feet and force his way back to the police line at the archway and into the tunnel area. Once A.W. was back in the tunnel, another officer realized A.W. was bleeding from his head. Officer A.W was subsequently taken to Washington Hospital Center and received staples to close the laceration on his head.

BWC and videos posted to social media document how Mullins violently pulled Officer A.W. out into the mob.  Officer C.M.'s BWC shows Officer A.W., in his reflective MPD jacket, on the ground of the archway as Mullins grabbed his leg. *See* Exhibit 10.0.  In the video, at least one other officer makes multiple attempts to pull Officer A.W. away from Mullins, essentially engaging in a battle of tug of war.

*Exhibit 10.1[4]*



MPD Officer D.P.'s BWC shows Mullins continuing to pull on Officer A.W.'s leg, pulling him further towards the crowd. *See* Exhibit 11.0

*Exhibit 11.1*



Videos documenting MULLINS' assault of A.W. were also posted on Instagram and

---

[4] This image is redacted in part because Rosanne Boyland's body is visible.

YouTube. A video posted by Storyful to YouTube[5] shows Mullins leaning over a handrail and making multiple attempts to grab Officer A.W.'s leg. *See* Exhibit 12.  Once Mullins successfully secured his grip on Officer A.W.'s right foot, he began violently pulling on it, ultimately leading to Officer A.W. being dragged down the stairs at the lower west terrace tunnel entrance.

*Exhibit 12.1*



After he dragged Officer A.W. out of the archway, the defendant then participated in the assault of Officer B.M., who was struggling to get to his feet in the crowd. The Storyful video shows that after Mullins dragged Officer A.W. down the steps, Mullins stood upright, and looked over his right shoulder and further down the steps to where Officer B.M. was located. At that time, several individuals were attempting to help Officer B.M. to his feet and up the stairs. Mullins began to yell at those individuals and frantically point back down the steps, towards the crowd.

---

[5] *Available at* https://youtu.be/aEGthdTzedk.

*Exhibit 12.2*



When the "helpers" continued to try to get Officer B.M. back to the police line in the arch, Mullins reached out with his right arm, and pushed Officer B.M. on the head back down the steps.

*Exhibit 12.3*



Eventually others guided Officer B.M. away from Mullins and off to the side of the violent

crowd.

### 4. Identification of the defendant

The New York Times published an article showing clear pictures of the defendant involved in the assaults of Officer A.W. and Officer B.M. *See* Evan Hill, Arielle Ray and Dahlia Kozlowsky, '*They Got a Officer!': How a Mob Dragged and Beat Police at the Capitol*, N.Y. TIMES, January 11, 2021, https://www.nytimes.com/2021/01/11/us/capitol-mob-violence-police.html (updated January 28, 2021).

*Exhibit 13*



*Exhibit 14*



On January 19, 2021, the FBI publicly released a "Be on the Lookout" or "BOLO for the defendant.

A lead directed law enforcement to a Kentucky driver's license for Mullins. Based upon the biographical data from Mullins' license, a financial account was identified for Mullins at FNB Bank, Inc. (FNB). Mullins was identified by an FNB employee, W-1, who had an approximate 30-year banking relationship with MULLINS. W-1 advised MULLINS was in the bank lobby on February 4, 2021. Law enforcement obtained surveillance video footage from FNB. The footage shows the defendant standing at a teller station in the lobby of FNB on February 4, 2021. W-1 identified the individual in the photograph as Clayton Mullins.

*Exhibit 15*



5. **Defendant's Arrest**

The defendant was arrested on February 23, 2021 while he was driving a vehicle that is registered to his car and used part dealership.  He had a firearm in the vehicle with him at the time of his arrest. [6]

---

[6] Both the defendant and his wife have Carrying Concealed Deadly Weapon (CCDW) permits.

# ARGUMENT

There are four factors under § 3142(g) that the Court should consider and weigh in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). In consideration of these factors, the government respectfully submits that there are no conditions or combinations of conditions which can effectively ensure the safety of any other person and the community or the defendant's return to the Court.

### 1.  Nature and Circumstances of the Offense Charged

The defendant's conduct was not an isolated incident, but rather at least two hours of sustained violence and obstruction.  He is facing multiple counts of violating 18 U.S.C. 111(a)(1) and 18 U.S.C. 231(a)(3), which are serious felony offenses.  The charges themselves may not necessarily be considered crimes of violence for the purposes of detention, but nevertheless involved multiple law enforcement victims, impeding law enforcement at various points during the day, and using physical force against law enforcement victims.

What is extremely troubling about the defendant's conduct is both the severity of his actions and the escalation of his violent assaults. As noted above, shortly after 2:00 p.m. on January 6, 2021, the defendant joined a large mob that substantially outnumbered law enforcement at a perimeter set up on the Capitol grounds.  The defendant participated in overrunning officers who were forced to retreat up the Capitol steps.  The defendant then pushed forward and approximately 2 hours later he ended up with a group of people that physically attacked law enforcement in an effort to gain entry to the building. The law enforcement officers were in full uniform with the

word "police" clearly visible.

At approximately 4:27 p.m., the defendant is observed physically grabbing a law enforcement officer and pulling him towards the violent mob where another officer was already being attacked. The defendant engaged in a 'tug of war' with the officer's leg and with other officers who were trying to rescue him.  The officer was eventually dragged down the stairs where his mask was ripped off, he was maced, and assaulted with poles. The assault on the officer resulted in a head injury that required staples to close. The defendant's assaultive behavior allowed the violent mob to assault this particular officer and others. Further, his behavior in part allowed the large mob of individuals to successfully breach the U.S. Capitol, putting additional law enforcement officers and members and staff of Congress at grave risk. The defendant's actions allowed other rioters to commit multiple other criminal acts inside the building.

The defendant's actions were violent, criminal, and represented a further dangerous escalation aimed at allowing other violent rioters to unlawfully enter the U.S. Capitol.  Because of his direct actions, an officer was injured and had to seek medical treatment for his injuries.  This factor clearly weighs in favor of detention.

## 2.  Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. As discussed above, the evidence against the defendant includes BWC from numerous different officers, extensive social media video footage, and photographs from major news media. The video evidence is objective and unwavering. It shows the defendant progressing up the restricted Capitol Grounds and nearly into the Capitol building, and becoming increasingly violent as the afternoon of January 6th went on.  It shows the defendant repeatedly confronting police, disregarding and dismantling police barricades, and ultimately assaulting multiple police

officers. Moreover, the defendant was ultimately identified by someone who had a longstanding relationship with him, and corroborated the identification through bank surveillance video. The evidence against this defendant is overwhelmingly strong, and accordingly, the weight of the evidence weighs heavily in favor of detention.

### 3. Defendant's History and Characteristics

The government recognizes that the defendant does not have any adult convictions.  His driving record, however, is replete with offenses that demonstrate both a disregard for the safety of others,[7] a disregard for his own personal safety,[8] and a general failure to abide by rules and regulations.[9]  He has no vehicles registered to himself personally – when he was arrested in this case, he was riding in a vehicle that was registered as a dealership vehicle for his car and use parts business.  While the defendant may not have used a weapon on January 6, 2021, he has access to firearms, and was indeed carrying one when he was arrested.

The defendant resides with his wife, but she also traveled with him from Kentucky to Washington, D.C.  While the defendant is employed, he is self-employed – meaning he has little accountability to anyone other than himself.  While law enforcement is not aware of the defendant making any public pronouncements about why he traveled to Washington D.C. on January 6, 2021, or what he did there, the defendant also does not appear to have any social media accounts. And while the defendant did not flee the country after the events of January 6, he also did not voluntarily surrender or contact law enforcement, despite his picture being prominently displayed in the New York Times, social media, and an FBI BOLO.  The defendant's actions, as demonstrated by his apparent willingness to engage in the assaultive behavior as part of a violent mob and specifically

---

[7] The defendant has numerous convictions for driving 15 miles per hour or more over the speed limit and improper equipment.
[8] The defendant has numerous traffic citations for not wearing a seatbelt.
[9] The defendant has numerous traffic citations for improper or expired registration and not having insurance.

target law enforcement officers should give this Court great concern about the danger he would pose to the community, if released.

### 4.  Danger to the Community and Flight Risk

The fourth factor, the nature and seriousness of the danger to any person or the community posed by a defendant's release, also weighs in favor of the defendant's detention. The charged offenses involve assaultive conduct aimed to stop the functioning of the United States government, specifically to derail the certification of the electoral process, a cornerstone of our democracy.  The defendant used physical force against two separate officers who were dragged into a violent mob.  And he did so at a time that individuals in a crowd were calling for the police to help them tend to a protestor who subsequently lost her life after being crushed by the mob.  The danger the defendant caused and poses by cannot be understated.

Moreover, the defendant not only violated the law himself, he enabled and contributed to others' ability to overrun the Capitol and assault law enforcement.  The defendant actively participated in dismantling police barricades and overwhelming law enforcement, forcing them to retreat.  He is seen prominently standing on the railings of the terrace.  He is seen getting expelled from a tunnel that provided direct access to the Capitol.  The defendant was a spoke in the wheel that caused the historic events of January 6, 2021, and he is thus a danger to our society and a threat to the peaceful functioning of our community.

Finally, the defendant has no known ties to the District of Columbia and is self-employed.  He now faces a significant term of imprisonment in the face of overwhelming evidence against him.  All of this gives him a compelling incentive to flee.

## **CONCLUSION**

The defendant was not a protestor swept up in the swagger of a violent mob – he was a violent instigator. The defendant has demonstrated a tendency toward violence and a willingness to impede and obstruct the right and lawful function of government.  He also has no ties to the district in which he has been charged and the potential sentence in this case gives him a reason to flee. It is clear that the defendant is both a danger to the community and a risk of flight. Considering all of the factors set forth above, there is no combination of conditions that will reasonably assure his appearance in the District of Columbia and/or the safety of the community. The defendant should therefore be detained pending trial.

Respectfully submitted,

Michael R. Sherwin
Acting United States Attorney
New York Bar No. 4444188

*/s/ Colleen D. Kukowski*
Colleen D. Kukowski
DC Bar No. 1012458
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2646
Colleen.Kukowski@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the Government's Motion for Pretrial Detention was served on all counsel of record via the Court's electronic filing service.

*/s/ Colleen D. Kukowski*
COLLEEN D. KUKOWSKI
Assistant United States Attorney

Date:  March 2, 2021